Mr. Axenfeld, whenever you're ready. May please report. Good morning. Uh, my name is Robert Axenfeld. I represent the appellant baby Merlin company in the, um, in Ray, um, Marine Howard. Um, this is a case that was appealed from the patent trademark and appeal board involving a, um, invention directed to a, a sleep suit for infants, um, that are transitioning from swaddling to, um, unswaddling, uh, meaning, uh, from about two months old to three months old. Um, and, uh, claims 24 through 27, um, and claims 28 through, I mean, 29 through 36 were rejected. Can you tell me, what is the status of claim 28? It is, uh, it is allowed, um, but, um, it, uh, it put in the independent format and, And that's assuming no disturbance, just by assumption of this question, no disturbance, uh, um, of the board's decision on this appeal, does it go back and you can get claim 28 issued or is that ship sailed? No, I believe we can, uh, still, uh, obtain that. Uh, claim, uh, after this case is heard. Um, I, I, unfortunately, normally this doesn't happen. Normally the, the claim is accepted and you would file a separate continuation application and try to, um, go for the claims that were rejected. At the time the, this case was allowed, the client was much, the size of the, of the business was much smaller and the default was that we, uh, should move forward with, um, uh, prosecuting the case and getting the claims that the client desired. So, um, so, um, anyhow, uh, the, the main issue here is, um, that the, um, viewed from the direction of looking forward. In other words, from the viewpoint of somebody of ordinary skill in the art without having any, uh, understanding of, um, uh, Who, who is a person of ordinary skill in this, in this area? I didn't really find any, was there any discussion of, of what kind of person would have ordinary skill in this area? Uh, no, Your Honor. And it's a good question. Um, the, um, I guess hypothetically somebody of ordinary skill in the art would, would be somebody who is familiar with sleepwear perhaps, or infant sleep. Uh, but that was never really discussed. It's not a particularly high level in this case, though, that you don't have to have a, a PhD in designing clothing or be a fashion artist or anything like that. You're, you're right. So, so this is a, uh, I would agree with you, Your Honor, that, um, this is a, um, a very, what, what it would look like, it appeared to be a very simple invention, uh, which it makes it more difficult. Um, so, but the main premise here that the main point that I would like to make is that without any, any inkling of, of, um, this, the problem here, I just should mention real quick, the problem that was solved here was, um, A, identifying that infants have difficulty transitioning from a swaddle environment to a non-swaddle environment. That's, that's first and foremost. None of the references remotely recognize that that's even an issue. Number two. But the, you, you also recognize that if the actual structure claimed was obvious for other reasons, the fact that this particular problem of helping, um, three month olds stay asleep, despite their startling, um, the fact that that was not recognized to be connected with what they're wearing wouldn't save the claims. Yes, Your Honor. I agree with you on that point, but in this case, there, there was no, there's no prior art, uh, of a sleep suit in this configuration. Well, that really goes to your argument that the sleep suit is in the preamble is a limitation of the claim, right? Uh, yes, yes, it is. Um, but if we reject that, then it seems to me your claim is extremely broad. And it's unclear to me, such language as, for example, with respect to the, um, um, second layer of material is located between the first layer of material and the third layer of material, which would typically be the case if one is numbering one through three, uh, on at least the anterior portion of the suit and at least corresponding to the shoulder area of the infant, which means it could be anywhere. Right? Uh, as, as long as it at least covers those two parts, it can cover the entire body. Yes. And isn't that just what the prior art suits do? No, the suit, there was no suit that had this layering. Uh, the prior art that was cited, there were two references. There's the Owen reference, which is a, a snow suit. And Ruffer. Right. It has three layers, right? It has three layers. It does have three layers. And it's, the middle layer is a heavier layer that. But it's in opposite to the, to a suit. In other words, it's a cocoon. It's an encapsulation where an infant is encapsulated at the time of birth. But the examiner or the board didn't use the Ruffer for the suit. They used it for the three layers. Correct. They used it for the three layers for warmth. And, um. But the purpose doesn't matter, right? Again. Well, assuming, assuming you're, you're, you're not correct that the sleep suit and functional, uh, limitation of functional recitations in the preamble are not limitations. Putting aside the, the, the preamble, the preamble was, it covers infants, um, beyond the age of swaddling. Uh, and, and it says sleep suit. If we put that aside, if you look at the physical elements, there is a suit. It's covers the sleeves, the legs. It says that it has to have ventilation, has a stoop neckline. It has, uh, exposed hands and feet. And then it says that it has layering. So. Just before you, before we leave the preamble, and I'll let you get right back to this, um, you said something, I think, in the briefs about how at least part of the preamble was added in response to rejections. Was that the post swaddling age or was that the sleep, sleep suit? Uh, post, the, the, uh, post swaddling age. Yes. Yes. The sleep suit was part of the preamble originally. Sleepwear. Sleepwear. I'm sorry. Um. Go back to what you were saying. So, so, uh, basically the, the examiner gave the, and the board agreed with the examiner that all that was needed was that the fact that one was for warmth and that you could transfer, transfer the concept of three layers from roofer into, uh, the configuration of Owen and you arrive at the invention. And what's troubling about that is that the, the decision ignores completely the fact that, uh, the, uh, uh, the Howards recognized a very complex problem. Can I simply interrupt? I mean, it seems to me one point you have maybe a central point when we put aside the preamble business is that the examiner and the board gave one and only one reason why somebody might, with Owen in front of them, want to use a different material and that is for warmth. And it seems hard to understand why somebody with what is after all a snow suit already warm would even be thinking there was a warmth problem to solve. That's exactly right. And put that way, it has nothing to do with whether anybody was recognizing a potential, um, benefit of helping the three month old sleep by, um, providing a certain kind of sleepwear. That's exactly it. I mean, the warmth is not the issue. Warmth doesn't solve the problem alone. It's waiting, waiting in combination with ventilation. And that's what this invention is. So can I just ask on that, on the waiting point, um, I was, I'm not sure you've defined waiting or made an argument at least here about waiting that, um, gives that term some definition over and above, um, the almost self-evident one that something with mass, which most garments have, maybe even all garments have, um, is weighted. So what's, what role does that play? And what, what is your understanding of what the term weighted means? Assuming here that we have claims as we do that don't, um, call for weight to be localized to particular areas in contradistinction to other areas. That is, you, you, you need to cover, um, you know, the, the, the full, full body coverage, um, third or second layer. Sure. The, the weighting, you know, it is found in the claims, for instance, in, in, in claim, uh, for example, in claim 24, the, the, the second layer, uh, because of, it's thicker than the first and the third, and the combination of all three together provides weighting. And it also provides bulk, which if you, in the application itself explains why it's difficult, at least for a three month old to turn over on their stomach while they're sleeping is because there's weighting around their hips and they can't lift their legs up and easily turn over. Once they get a little bit older, they get strong enough. They can turn over, but at that time, um. Well, have you, I mean, what does, what does weighted mean in a, in a way that you put on, um, on the baby, which has weight? Well, remember this is a three layers, uh, you know, a single layer sandwich between, uh, you know, an inner and an outer layer. And, and that's where the weighting is. Uh, that's what we consider the weighting. Uh, and, and so if it's not in that configuration, then, you know, if you're just wearing a single layer, um. To ask the same questions, just try to, but why doesn't the weighting, uh, limitation read on all three layered garments? The reason, well, the reason it doesn't, uh, is, um, in, in the sleepwear, I guess it comes back again to the preamble in a sense, in the sleepwear, um, I, would it read on a snowsuit? Potentially it could read on a snowsuit. And, but this is not a snowsuit. And, uh, you know, the whole, this whole application is directed to the sleepwear. Focusing just on the weighting, why doesn't the weighting read on all three layered garments? It does read, if it's a sleep suit and it has all these, all the other elements, it would read on it. It would read on it. So it adds nothing beyond what the three layers add. The, what, what, what, that limit, the weighting limitation adds nothing to the limitation requiring that there be three layers. Um, correct. I mean, it, it, it does in the sense that, um, you know, it's added to provide, um, explanation as to how this claim, you know, focuses this the intent here is, and I understand that, uh, you know, but the, the physical, um, the physical properties of the claim are, um, uh, you know, it are listed in, in, in, in the claim. So, um, anyway, I'm probably didn't answer that question well, but I, uh, Well, I, here's my concern and this comes up fairly frequently. It came up, for example, in, well, it comes up frequently enough where someone goes before an examiner with broadly written claims, the examiner rejects the claims, goes to the board. The board says read most reasonable, most reasonably, uh, broad fashion. Uh, these claims are, are, uh, uh, rendered obvious by some combination of prior art. It seems to me there may be an invention with respect to some of these claims that would be as claim 28 did, would emerge if you narrowed the claims by, for example, pointing out particular areas of the body where weight should go. But it's hard to me, uh, to see why these claims are not so broad that they read on just about any suit that has three layers. Um, I guess, I guess that's the, where, uh, the appellant believes the distinction is, is that it just, it's not, it's not intended in, if this ever was to go, I mean, given all the record here, this is limited strictly to, um, sleep suits. And infant sleep suits. And, uh, there is no way that there's any intention to try to read the claims on a, a, a, a snowsuit, uh, that's not, uh, I mean, it's very clear. And, and, uh, it's difficult, um, given the, uh, commercial embodiment, I see I'm almost running out of time here, but it's difficult given the commercial embodiment to, um, to craft the claims more narrowly, at least in, at the time, uh, that this was written in, in 2004, 2005 timeframe and by the, by the time the appeal was filed. So, um, but it truly is, it does cover what was intended here, which was a, a, a sleep suit that, that is remarkable without, I didn't even get to the secondary considerations, but really shows that it, it functions and it , uh, the sales have doubled month to month from the time, uh, the invention was introduced in, in, into 2008, 2009 timeframe to today, where it's now the, um, standard for sleepwear, uh, recommended in, in stores such as Babies R Us and, and around the country. So, um, anyway, I, I, thank you, thank you, Mr. Ashton, we'll restore your rebuttal time. Thank you. Good morning, good morning, may it please the court. In her briefing to the court, Ms. Howard has described her invention as an infant suit with waiting on the front side of the suit. And that's on her blue brief at page 14 and the reply brief, page three to four, page six, page eight. The PTO has already allowed a claim to a suit with waiting just on the front. And that's claim 28. And in answer to your question, yes, Ms. Howard can come back to the PTO after this court's decision. And if that claim is properly rewritten, unless the court tells us something different, it would be allowable. Can I ask you the question that I, uh, one of the questions I asked Mr. Axenfeld, um, the examiner and the board said, if you start with Owen, there'd be a motivation to look for three layer material for warmth and I'm having trouble understanding how that's even a rational thing to say when you start with a snowsuit. Okay. First of all, we don't think Owen is limited to a snowsuit. Owen is a convertible garment. Well, but not convertible by replacing the material around the body. It's convertible from the sack to a footed thing. Right. But it's more broader and that's it's preferably can be converted to a snowsuit. So it doesn't have to be converted necessarily to a snowsuit. It can be converted to another suit with leggings. Also, Owen doesn't tell you what fabric to use at all. So a person of ordinary skill in the art reading Owen would say, well, what fabric should I use and would have every reason to go to a reference like roofer because roofer is all about keeping infants warm. The whole discussion of the prior art and roofer is, you know, infants need warmth, how do we do this? And then roofer solution is a three-layer garment. So I think there would be every reason for a person of ordinary skill in the art reading Owen that doesn't disclose what fabric to go and look for what fabric to use. But it discloses something that other than by replacing the material, right at the beginning is a snowsuit. Why would somebody think there's a warmth deficiency problem here to be solved? They wouldn't necessarily think there's a warmth deficiency, but Owen doesn't tell you what fabric to use. Completely silent. And anything that would serve as a snowsuit, which I think means it's warm, no? Already. So you read Owen and you say, okay, here's this convertible garment, which we don't think is limited to a snowsuit. And then you say, what fabric should I use? And so why wouldn't you, a person of ordinary skill knows about the art. Why wouldn't they look at art to say, what fabric should I use for Owen? Owen doesn't tell you. Use fleece, use this, use that. So I think a person would have every reason to go look at the art and see what are good fabrics for warmth. So the idea is even assuming, just assume that the fabric in Owen provides warmth, that there would still be some motivation to explore a range of possible warmth fabrics. Right. Because Owen doesn't tell you what fabric to use. So it's kind of like Howard is presenting this as Owen already tells you, make a warm snowsuit and then, you know, it's ridiculous to go and put three layers on top of that, but Owen doesn't disclose what fabric to use. So I don't think there's anything unusual to look at the art as to what are appropriate fabrics. Even if you, even if you say Owen is limited to a snowsuit, you would look for warm fabrics to use. And that's what Roofer is about. His other argument seems to be, Mr. They're not analogous art, which we disagree with for both infant garments. And in terms of, so anyhow, back to the scope of this claim. So claim 28, the patent office has said it's allowable under the broadest reasonable interpretation. We say that this claim, much broader, much broader than what Howard herself has said is her invention and that it covers three layer suits with leggings. If the court has no questions, I won't talk about secondary considerations and rest on my brief. What do you understand to have been the inventive contribution of Owen over the prior art at that time? I recognize it's an old patent, Canadian patent. I think Owen was focused on it being convertible. Right. It could either have leggings or not leggings. I see. Okay. So this court has no further questions in particular about secondary considerations. I'm happy to yield my time. Thank you. Owen, by the way, has a foot on it and whether it's convertible or not, it appears to be directed to a sleep suit, I mean, to a snowsuit. I guess the biggest thing that is missing here is the fact that this inventor first introduced a very complex problem, which is how to put an infant on its back for sleep in compliance with the American Academy of Pediatrics guidelines to avoid SIDS without using a swaddling device, without using rolls or blankets and do so so that the startle reflex isn't initiated every 15, can be up to every 15 seconds and it wakes the baby, startles the baby and so forth. In this case, the inventor was the only person who recognized that problem and the inventor was the only person that recognized how to solve that problem. These references that were cited based on warrants give no guidance whatsoever to this problem. And in terms of warrants itself, the American pediatric guidelines say that overheating a sleep suit seems to be, so somebody of ordinary skill in the art would not readily look to warmth as something to solve a problem that nobody identified because it is not, most sleep suits that are on the market at that time were a single layer, they usually covered the feet and were not intended to be in compliance with the guidelines so that they wouldn't be overheating. Whereas in this case, the inventors went a counterintuitive way, they put a lot of weight and material in there that you normally wouldn't see in a sleep suit in this configuration, but at the same time they made sure there was ventilation, scoop neck line, exposed hands and feet so that there was a counterbalance to that and would allow the baby not to overheat. Can I ask you just one quick question? Is there anything in the intrinsic evidence that suggests what particular target points of an infant's body would be proprioceptive? Yes, for me that was a new word. Yes, proprioceptive target points were mentioned in the patent application itself and that is... What I mean is, is there medically some portion of the body that is proprioceptive and some other portions that are not? Yes, as far as I know, based on what the inventor who is an expert in this area, in pediatric care, is that it's the shoulders and the hip areas are especially areas where the nerve endings in an infant are immature and cause it to startle, where there is no weight when they are sleeping on their back. I see I've run out of time. If you have any other questions, I can answer them otherwise. Thank you so much. Thank you, Mr. Ashton. The application is submitted.